UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| **KENNETH SNOWDEN**, *et al*, ) | |
| ) | **Case No. 18-00160 (PJM)** |
| ) | **Hon. Peter J Messitte** |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| **PRINCE GEORGE'S COUNTY,** ) | |
| **MARYLAND**, *et al.;* ) | |
| ) | |
| Defendants. ) | |

## RESPONSE TO COURT'S ORDER TO SHOW CAUSE

This Court issued a Show Cause Order (1) directing Plaintiffs to explain why their claims for declaratory and injunctive relief should not be dismissed as moot, (2) directing Plaintiffs to set forth the precise compensatory and punitive damages claimed by each Plaintiff, and (3) to direct the Court to comparable cases awarding compensable damages.

Prince George's County, in this case, has violated the significant religious rights of the six Muslim Plaintiffs for a period that stretched years. Plaintiffs were unable to engage in basic daily group worship. For the vast majority of time, they were denied the ability to participate in their most sacred weekly prayer, known as Jummah. For the sole reason they were Muslim, Prince George's County treated the Plaintiffs as part of a gang.

Plaintiffs agree that the declaratory and injunctive relief should be dismissed. But damages remain on the table. And while the value of religious and constitutional rights are inherently hard to quantify, other decisions in similar case suggest an award in the low to mid six figures, inclusive of punitive damages (if any) and attorneys' fees.

1

I.   **Plaintiffs agree to dismissal of claims for declaratory and injunctive relief.**

At this point, Plaintiffs agree to the dismissal of their claims for declaratory and injunctive relief.

II.  **Plaintiffs continue to have a significant claim for damages under RLUIPA and the First Amendment.**

A.   **Plaintiffs have been harmed by Defendants' unlawful conduct.**

As prior filings in this case indicate, the six plaintiffs in this case have been incarcerated at Prince George's County Department of Corrections for various, but significant, periods of time. Duran Carrington was at PGCDOC from October 5, 2016, to January 31, 2019, for approximately 28 months. Dkt. 73-1 at ¶ 24. Michael Harris was at PGCDOC from November 25, 2015, to August 2, 2018, for approximately 32 months. *Id.* at ¶ 25. David Francis was at PGCDOC from December 14, 2016, to January 18, 2018, or approximately 13 months. *Id.* at ¶ 26. Kenneth Snowden was at PGDOC from June 24, 2016, *id.* at ¶ 26, through sometime between May 8, 2019, *see* Dkt. 73-9 at 7-8 and September 26, 2019, *see* Dkt. 68-18, or approximately 34-39 months. The two final Plaintiffs entered PGDOC on January 23, 2017 (Darnell Munden), and December 6, 2016 (Kevin Stewart), Dkt. 73-1 at ¶¶ 27-29, and were released sometime between October 31, 2019, *id.*, and July 16, 2021, Dkt. 106, for periods of somewhere between 31 months and 55 months.

B.   **RLUIPA and the First Amendment allows damages claims absent physical injury or emotional distress.**

The County claimed at summary judgment that "all of Plaintiffs' claims fail" because of the absence of physical injury." Dkt. 73-1 at 19-20. The County suggests this is required by 42 U.S.C. § 1997e(e), which is part of the PLRA. Section 1997e(e) prohibits claims "for mental or emotional injury suffered while in custody without a prior showing of physical

injury or the commission of a sexual act." But Section 1997e(e) section does not apply to "claims brought to redress constitutional injuries, which are distinct from mental and emotional injuries." *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015) (citations omitted). Thus, Section "1997e(e) does not foreclose claims that allege violations of First Amendment-protected rights as injuries." *Id.* (affirming presumed damages of $5 a day, totaling $1475, for prisoner transferred to higher security prison in retaliation for First Amendment-protected activity). Indeed, in an opinion this week issued in this District over a challenge to the same policy at issue here, Judge Grimm explained "that a First Amendment violation stands as its own compensable injury so that '§ 1997e(e) does not foreclose the possibility that Wilcox may prove entitlement to compensatory damages.'" *See Brown v. Prince George's County*, 19-cv-1988, Slip op. at 6-7 (Apr. 4, 2022) (attached as Exhibit A) (quoting *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017)) (other citations omitted).

In the First Amendment context, damages in the absence of physical injury or emotional distress in First Amendment cases are fairly common. *See Phillips v. Bowen*, 278 F.3d 103, 111 (2d Cir. 2002) (upholding $400,000 award in First Amendment retaliation case); *Sykes v. McDowell*, 786 F.2d 1098 (11th Cir. 1986) ($60,000 for First Amendment retaliation vs. public employee). Likewise, in the prison context, courts have allowed non-physical-or-mental-injury damages for First Amendment violations. *See King*, *id.*; *see also Sallier v. Brooks*, 343 F.3d 868, 880 (6th Cir. 2003) (affirming jury award of $750 in compensatory damages for each instance of unlawful opening of legal mail); *Goff v. Burton*, 91 F.3d 1188, 1192 (8th Cir. 1996) (affirming $2250 award at $10 a day for lost privileges resulting from a retaliatory transfer to a higher security prison); *Cornell v. Gubbles*, 2010 WL 3928198, *2-3 (C.D. Ill., Sept. 29, 2010) (awarding $500 for opening plaintiff's letters and

reading them over the prison PA system); *Vanscoy v. Hicks*, 691 F. Supp. 1336, 1338 (M.D. Ala. 1988) (awarding $50 for pretextual exclusion from religious service, without evidence of mental anguish or suffering). Other cases outside the First Amendment have also allowed for non-mental injury damages even in the absence of physical harm. *See Nolley v. Cty. of Erie,* 802 F. Supp. 898, 902-05 (W.D.N.Y. 1992) (awarding presumed damages of $10 a day, totaling $3100, for unauthorized disclosure of HIV status in jail, in addition to damages for mental distress from segregated confinement); *In re Nassau Cty. Strip Search Cases*, 742 F. Supp. 2d 304, 331 (E.D.N.Y. 2010) (awarding $500 in "presumed, or general damages" for each improper strip search).[1]

In this case, of course, Plaintiffs bring claims under the First Amendment religion clauses and RLUIPA. Judge Grimm—dealing with the exact same policy at issue in this case--just affirmed that municipalities are liable in damages to RLUIPA violations. *Brown*, Ex. A at 8-12. Judge Grimm's analysis is sound. Plaintiffs are entitled to damages under RLUIPA as well as the First Amendment.

  **C.**  **Extrapolating from similar cases, an award of $300,000 to $500,000 (inclusive of attorneys' fees) or more is reasonable.**

The most similar damages case Plaintiffs could find is *Howard v. Connett*, 11-cv-1402, 2018 WL 4035938 (D. Nev. Aug. 23, 2018)*.* In that case, Plaintiff alleged that Defendants restricted his ability to pray and denied him the ability to engage in Friday Jummah—much like here—for a several year period. *Id.* Plaintiff was awarded a total of $39,300 in compensatory and punitive damages (split approximately 50-50 between the two), plus another $58,950 in attorneys' fees. *Id.* at *3. $7,400 of the damages relate to Eighth

---

[1] The PLRA was enacted in 1995. Some of these cases predate the law and do not consider Section 1997e(e).

Amendment conditions of confinement and First Amendment retaliation claims not at issue here. *Id.* at *2-3. If the remaining $31,900 were awarded to each Plaintiff in this case, the total compensatory and punitive damages award would be $191,400. Even without punitive damages, the award would be approximately $90,000.

Even at $10 a day for each incarceree—the amount awarded in *Nolley,* 802 F. Supp. at 902-05, and *Goff,* 91 F.3d at 1192—damages for the six plaintiffs would combine to a total of $60,000, before punitive damages or any fee award. And *Nolley* and *Goff* were each also issued over 25 years ago. Inflation would mean $20 a day today would be more appropriate, for a total of $120,000, before punitive damages and fees.

Of course, this case has involved significant briefing, oral argument, and depositions. Even with the PLRA hourly cap, 42 U.S.C. § 1997e(d)(3), Plaintiffs' counsel will likely have more fees than the PLRA's 150%-of-damages-cap, 42 U.S.C. § 1997e(d)(2), would allow, in all but the largest of fee awards. So Plaintiffs are likely to obtain another 150% of any award in fees, as well. 42 U.S.C. § 1997e(d)(2).

So between the possibility of compensatory damages and attorneys' fees, a total award of up to $300,000 would not be a "pie-in-the-sky" award in this case, *see* Dkt. 113 (Order to Show Cause) but reasonably based on the mounts awarded in *Howard*, *Nolley*, and *Goff*, even in the absence of punitive damages. If a jury believed punitive damages were appropriate, of course, that amount could increase to $500,000 or more.

Because the Court requires Plaintiffs to set forth the specific damages sought, Plaintiffs assert as follows:

- Compensatory damages of $120,000, to be divided among each of the six Plaintiffs.

- Punitive damages of $360,000, to be divided among each of the six Plaintiffs.

5

- An award of attorneys fees consistent with 42 U.S.C. §§ 1997e(d)(2)-(3).
- Prevailing party costs under Federal Rule of Civil Procedure 54.[2]

Of course, as mentioned by Plaintiffs in their status report, Dkt. 112, Plaintiffs hope this case can be settled at a reduced amount.

## CONCLUSION

The Court may dismiss the declaratory and injunctive claims. If the parties cannot settle the matter, the Court should hold a jury trial to determine damages.

Dated: April 7, 2022

BY: /s/ Lena F. Masri
Lena F. Masri (20251)
Gadeir I. Abbas (20257) *
Justin Sadowsky (20128)
CAIR LEGAL DEFENSE FUND
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-87

*Mr. Abbas is licensed in VA, not in D.C. Practice limited to federal matters*

Attorneys for Plaintiffs

---

[2] Because Plaintiffs' counsel would have to expend additional hours and costs in order to bring this case to trial, Plaintiffs cannot quantify an amount for either category at this time.